UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRYSTAL DUNHAM,

     Plaintiff,

  - against -

COVIDIEN, LP,

     Defendant.

19-cv-2855 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Crystal Dunham, brings this action against the defendant Covidien, LP, asserting 11 claims for common law strict products liability (manufacturing defect, design defect, and failure to warn), negligence, breach of warranty (express and implied), negligent and fraudulent misrepresentation, unconscionable commercial practices under New York General Business Law Sections 349 and 350, unjust enrichment, and punitive damages. The plaintiff's claims arise from injuries allegedly sustained because of the implantation of the defendant's synthetic mesh product in the plaintiff's body as part of a hernia repair procedure.

The defendant in this case moves to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, and for substantially the same reasons that judges in this district have dismissed similar recent cases and this Court dismissed the plaintiff's

1

First Amended Complaint, the defendant's motion to dismiss is **granted.**

I.

The following facts are drawn from allegations set out in the Second Amended Complaint and are accepted as true for purposes of this motion to dismiss.

On June 6, 2014, the plaintiff underwent a laparoscopic ventral hernia repair procedure performed by Drs. Edward Choongho Lee and Lori Ann DeFreest. Second Am. Compl. (hereinafter "SAC") ¶ 69. The procedure involved introducing the defendant's Rectangle Parietex Optimized Composite Mesh (the "Mesh" or the "Product") into the plaintiff's peritoneal cavity to reinforce tissue affected by the hernia. Id. ¶¶ 69-70. A hernia is a medical condition caused by the penetration of fatty tissue, intestine, or organs through a weakened or compromised location in muscle or connective tissue. Id. ¶ 20. Hernia repairs are common surgeries and they often involve the use of surgical mesh to strengthen the repair. Id. ¶¶ 24-25. The Mesh, which is a synthetic surgical product made from polyester and an absorbable collagen film, is intended to remain inside the body permanently. Id. ¶¶ 27-29. The Mesh is manufactured and sold by the defendant. Id. ¶ 36. A particular rectangle of Mesh, measuring 15x20cm as sold, was used by Dr. Lee during the plaintiff's surgery. Id. ¶¶ 69-70. Prior to implanting the Mesh

into the plaintiff's abdomen, Dr. Lee trimmed the Mesh down to approximately 15x15cm. Id. ¶ 71. Following the surgery, the plaintiff allegedly suffered chronic abdominal pain, which led to a revision surgery on December 14, 2016 during which Dr. Lee inserted circular Mesh into Ms. Dunham's body. Id. ¶¶ 72-74.

The plaintiff alleged ongoing pain as a result of defects in the Mesh product, which has led to chronic and persistent stomach pain, swelling and intestinal protrusion on the site of her hernia repair surgery resulting in pain that forces her to walk with a cane, and continuous digestive problems. Id. ¶¶ 81-83. Additionally, the plaintiff alleged increased risk of organ malfunction, recurrent hernias, perforation of tissue and organs, adherence to tissue and organs, infection, nerve damage, subsequent surgeries, and other complications. Id. ¶ 84. More broadly, the plaintiff alleged economic damages, severe and permanent injuries, emotional distress, mental anguish, and psychological trauma of living with defective products still implanted in her body. Id. ¶ 85.

The allegation underlying the plaintiff's strict products liability claim was that "[t]here was an unreasonable risk that the Products would not perform safely and effectively for the purpose for which they were intended," and that the injuries suffered by the plaintiff were proximately caused by the product. Id. ¶¶ 99, 103. With respect to the claim for defective

design, the plaintiff alleged that "[a]lternative designs for the Product and/or procedures existed that were and/or are less dangerous and equally, if not more, effective, including the use of polycarbonate, polystyrene, and polypropene [sic] as alternatives." Id. ¶ 114. The plaintiff's allegations for failure to warn refer to a number of the defendant's instructions for use, brochures, advertisements, and public warnings, that the plaintiff alleged "were ambiguous or were not sufficient, accurate or clear." Id. ¶ 135.

The plaintiff's non-products liability claims arose from the same set of allegations that formed the basis for her strict products liability claims. Thus, the plaintiff's negligence, breach of warranty, negligent and fraudulent misrepresentation, New York statutory consumer fraud, unjust enrichment, and punitive damages claims arose from the same underlying allegations set out to support the plaintiff's claims for defective manufacture, defective design, and inadequate warning. Id. ¶¶ 139-233.

On October 30, 2018, the plaintiff filed a complaint in the New York State Supreme Court, New York County. On February 19, 2019, the plaintiff filed an amended complaint in the state court (the "First Amended Complaint"). On March 29, 2019, the defendant filed a notice of removal in this Court properly invoking diversity of citizenship jurisdiction under 28 U.S.C.

4

§ 1332. On November 1, 2019, this Court dismissed the
plaintiff's First Amended Complaint with leave to file an
amended complaint. On December 3, 2019, the plaintiff filed the
Second Amended Complaint that is the subject of the present
motion to dismiss.

This action is substantially similar in its factual
allegations and claims to several actions recently brought in
this district and dismissed pursuant to Rule 12(b)(6). See
Kelly v. Covidien, Inc., No. 19-CV-05497 (S.D.N.Y. Jan. 7,
2020), Dkt. No. 16 (dismissing complaint); Green v. Covidien LP,
No. 18-CV-2939, 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019);
Kenneth Dunham v. Covidien, LP, No. 19-CV-2851, 2019 WL 2461806
(S.D.N.Y. May 22, 2019) (hereinafter "Dunham, K."); Kennedy v.
Covidien, LP, No. 18-CV-1907, 2019 WL 1429979 (S.D.N.Y. Mar. 29,
2019); Rincon v. Covidien, No. 16-CV-10033, 2017 WL 2242969
(S.D.N.Y. May 22, 2017). This case also is substantially similar
to Krulewich v. Covidien, No. 19-CV-2857, before this Court,
which this Court also is dismissing in an Opinion filed
contemporaneously with this Opinion.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

5

2007).[1] The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

## III.

The plaintiff brings the following claims:  (1) manufacturing defect; (2) design defect; (3) failure to warn; (4) negligence; (5) breach of express warranty; (6) breach of implied warranty; (7) negligent misrepresentation; (8) fraudulent misrepresentation; (9) unconscionable commercial practices; (10) unjust enrichment; and (11) punitive damages.

### A. Manufacturing Defect

The plaintiff alleges claims for each of the three types of strict products liability that can be asserted in New York: manufacturing defect, design defect, and failure to provide

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

adequate warnings. See Voss v. Black & Decker Mfg. Co., 450

N.E.2d 204, 207 (N.Y. 1983).[2] In Count I, the plaintiff alleges

that there was a manufacturing defect that rendered the Mesh

unsafe and ineffective. To state a claim for strict products

liability under a manufacturing defect theory, a plaintiff must

plead "that a specific product unit was defective as a result of

some mishap in the manufacturing process itself, improper

workmanship, or because defective materials were used in

construction, and that the defect was the cause of plaintiff's

injury." Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d

53, 85 (S.D.N.Y. 2001). Therefore, a manufacturing defect claim

will be dismissed if a plaintiff has not alleged that the

specific product that allegedly caused the plaintiff's injuries

was defective as compared to other products manufactured by the

defendant. Goldin v. Smith & Nephew, Inc., No. 12-cv-9217, 2013

WL 1759575, at *2 (S.D.N.Y. Apr. 24, 2013). A plaintiff may rely

on circumstantial evidence to support a manufacturing defect

claim if the plaintiff can prove that the product did not

perform as intended and excludes all other causes for the

---

[2] The plaintiff alleges that Dr. Lee trimmed the Mesh from 15x20 cm to 15x15
cm. SAC ¶¶ 70-71. "Material alterations at the hands of a third party which
work a substantial change in the condition in which the product was sold by
destroying the functional utility of a key safety feature, however
foreseeable that modification may have been, are not within the ambit of a
manufacturer's responsibility." Robinson v. Reed-Prentice Div. of Package
Mach. Co., 403 N.E.2d 440, 444 (N.Y. 1980). The trimming of the mesh does not
affect the analysis in this case because there is no indication that the
trimming was the kind of "material alteration" that destroyed a key safety
feature of the Mesh.

product's failure not attributable to the defendant. See id. at

*3 (citing Speller ex rel. Miller v. Sears, Roebuck & Co., 790

N.E.2d 252, 254-55 (N.Y. 2003)).

This Court dismissed the plaintiff's manufacturing defect

claim in the First Amended Complaint because the plaintiff did

not allege plausibly that the specific piece of Mesh implanted

in her body was defective because of a problem in the

manufacturing process that rendered that piece of Mesh different

from all other Mesh manufactured by the defendant. The plaintiff

merely alleged in a conclusory fashion that "Defendant's hernia

mesh product was defective in its manufacture"; "the product

deviated from manufacturing standards when they [sic] came off

the production line"; and "Defendant's hernia mesh product

failed to perform in its intended manner due to a flaw in the

manufacturing process, evident by Plaintiff [sic] injuries, and

which will be established by expert testimony." First Am. Compl.

(hereinafter "FAC") ¶¶ 86-88. These conclusory statements were

not sufficient to state a claim that the Mesh used during the

plaintiff's surgery was defectively manufactured. Nor did these

allegations amount to circumstantial evidence of a manufacturing

defect because the plaintiff had not excluded other causes that

were not attributable to the defendant.

The plaintiff did not cure her defective pleading. The

plaintiff alleged that "the Product deviated from manufacturing

standards when it came off the production line," and that "[d]ue
to an error in the manufacturing process, the Products that were
implanted in the Plaintiff deviated from the specifications or
design of the Product." SAC ¶¶ 89-90. However, the plaintiff
does not allege the specific manufacturing defect that caused
the plaintiff's injuries. The plaintiff's conclusory allegations
are not sufficient to show the specific defect in the Mesh as
used in Ms. Dunham. Nor are the allegations sufficient to
provide circumstantial evidence of a manufacturing defect
because the plaintiff has not excluded other causes that are not
attributable to the defendant. See, e.g., Dunham, K., 2019 WL
2461806, at *2; Kennedy, 2019 WL 1429979, at *4 ("Here,
Plaintiff does not allege that a particular mishap occurred in
the manufacturing process that rendered the specific implanted
unit of [the] Mesh defective . . . [n]or does Plaintiff proffer
circumstantial evidence showing that the product did not perform
as intended and excluding any alternate causes of his
injuries."). In fact, the injuries suffered by the plaintiff are
among the most common side effects of a hernia surgery. See SAC
¶¶ 30-32. Therefore, the plaintiff failed to cure the defect in
the manufacturing defect count and failed to state a claim.

### B. Design Defect

In Count II, the plaintiff alleges that the Mesh was
defectively designed. The design defect inquiry considers

whether "the product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Voss, 450 N.E.2d at 207 (quoting Robinson v. Reed-Prentice Div. of Package Mach. Co., 403 N.E.2d 440, 443 (N.Y. 1980)). To state a claim for strict products liability under a design defect theory, the plaintiff must allege that "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." Simon v. Smith & Nephew, Inc., 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (quoting Colon, 199 F. Supp. 2d at 83). Courts generally require a plaintiff to allege adequately a safer alternative design. See DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 622-23 (S.D.N.Y. 2012) ("[I]t is well settled that to establish a claim predicated upon a design defect, plaintiffs must present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and that it was feasible to design the product in a safer manner.") (quoting Sabater ex rel. Santana v. Lead Industries Association, Inc., 704 N.Y.S.2d 800, 804 (Sup. Ct. 2000)).

This Court dismissed the plaintiff's design defect claim in the First Amended Complaint because the plaintiff failed to allege plausibly that there was a safer alternative design. The First Amended Complaint consisted of conclusory statements, including that "[a]lternative designs for hernia mesh product and/or procedures existed that were and/or are less dangerous and equally, if not more, effective, including the use of polycarbonate and polystyrene as alternatives." FAC ¶ 122. The First Amended Complaint failed to provide specific factual pleadings that gave rise to a reasonable inference that the alleged alternative designs were, in fact, feasible alternatives. See, e.g., Kennedy, 2019 WL 1429979, at *4. Without specific factual pleadings adequately alleging a feasible alternative design and that the design defect caused the plaintiff's injuries, the plaintiff's claim for design defect failed. See, e.g., Green, 2019 WL 4142480, at *3 ("Simply asserting that a feasible alternative design exists – without pleading any supporting facts – is not sufficient to plead a defective design claim or to put Defendant on notice as to what that design might be.").

In the Second Amended Complaint, the plaintiff alleges that the Mesh was defectively designed in that "[o]nce the Product's polyester fibers unravel, they become detached from the mesh and migrate to other regions of the body," causing inflammation,

nerve damage, and nerves that grow into the pores of the Mesh after implant. SAC ¶¶ 53-56. The plaintiff further alleges that "[a]lternative designs for the Product and/or procedures existed that were and/or are less dangerous and equally, if not more, effective, including the use of polycarbonate, polystyrene, and polypropene [sic] as alternatives." Id. ¶ 114.

The plaintiff's proposed alternative design is to use polypropylene instead of polyester. SAC ¶¶ 111, 114. However, other courts considering a similar issue found that proposal insufficient to support a design defect claim. See, e.g., Dunham, K., 2019 WL 2461806, at *3 (the design defect claim failed because the plaintiffs "merely allege[d] that . . . different materials like polycarbonate or polystyrene, are safer and more effective alternatives to hernia mesh.").

Moreover, the plaintiff has not alleged adequately that the failure to use polypropylene caused the plaintiff's injuries, apart from conclusory allegations, such as that her injuries were "a direct and proximate result of the defective and unreasonably dangerous Product." SAC ¶ 122. The plaintiff alleges that "[a] substantial factor causing the Product's defects is Covidien's design and use of polyester material for the Product's mesh rather than the industry standard, polypropylene. Polyester is weaker than polypropylene and therefore more prone to tearing away from the tacks; causing

12

severe inflammation. Polyester is also less sturdy than polypropylene, creating difficulty during surgery. Beyond this, unlike most hernia mesh devices, the Product has unsealed edges, causing the Product's edges to fray and disintegrate once the Product has been implanted. Once this has happened, organ perforation can result." SAC ¶ 111. The plaintiff also cited to one study that argued that polyester mesh should not be used in hernia repair surgery. Id. ¶ 112.

Despite these allegations that the use of polyester could cause injuries, the plaintiff has not alleged adequately that the use of polyester in fact was a substantial factor in causing Ms. Dunham's injuries. See Simon, 990 F. Supp. 2d at 404. To the contrary, the plaintiff alleges that injuries Ms. Dunham suffered were among the most common injuries caused by hernia surgeries using any type of mesh. SAC ¶¶ 30, 77-81. That one study argued against using polyester mesh is not sufficient to meet the plaintiff's burden to plead a causal link between the use of polyester and Ms. Dunham's injuries. And that a polypropylene-based product may be safer, even if true, does not mean that the use of the polyester Mesh caused the plaintiff's injuries. The plaintiff's threadbare allegation that "Covidien's design and use of polyester material in its hernia mesh Product posed a substantial risk for severe inflammation and was a substantial factor in causing Plaintiff's injuries" is likewise

13

insufficient. Id. ¶ 108; see also Iqbal, 556 U.S. at 678
("Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice" to
state a cause of action.). As courts considering similar issues
have concluded, the plaintiff in this case "does not address the
numerous plausible alternative explanations for [the
plaintiff's] medical problems, including natural complications
from [her] hernia disease or the development of a new hernia."
Dunham, K., 2019 WL 2461806, at *3; see also Rincon, 2017 WL
2242969, at *1. Therefore, because the plaintiff has not
adequately pleaded that the use of polyester was a substantial
factor in causing Ms. Dunham's injuries, the plaintiff has
failed to allege adequately a design defect claim.

## C. Failure to Warn

In Count III, the plaintiff alleges that the defendant
provided inadequate warnings about the dangerous risks
associated with the Mesh. To state a strict product liability
claim for failure to warn, the plaintiff must allege plausibly
that "(1) a manufacturer has a duty to warn (2) against dangers
resulting from foreseeable uses about which it knew of should
have known, and (3) that failure to do so was the proximate
cause of the harm." State Farm Fire & Cas. Co. v. Nutone, Inc.,
426 Fed. App'x 8, 10 (2d Cir. 2011); Goldin, 2013 WL 1759575, at
*5; see also Liriano v. Hobart Corp., 300 N.E.2d 303, 305 (N.Y.

1998). At the motion to dismiss phase, a plaintiff must plead
facts that show how the warning was inadequate or insufficient.
See Reed v. Pfizer, Inc., 839 F. Supp. 2d 571, 575 (E.D.N.Y.
2012).

The plaintiff's failure to warn claim in the First Amended
Complaint failed because the plaintiff did not provide factual
support for the conclusory statements that "Plaintiff and
Plaintiff's physicians were not provided adequate warnings"
about the effects of the Mesh on the plaintiff and that the
warnings "were not sufficient, accurate or clear." FAC ¶¶ 139-
145; see also Kennedy, 2019 WL 1429979, at *5 ("Plaintiff has
failed to provide factual support for his conclusory assertion
that Defendant's warnings did not adequately caution physicians
and patients concerning the risks associated with PCOx Mesh.").
The plaintiff's allegations in this regard were entirely
conclusory, and did not amount to anything more than repeated
statements that the defendant's warnings and instructions for
use were inadequate.

The additional allegations in the Second Amended Complaint
do not cure the defects in the plaintiff's failure to warn
claim. The plaintiff added allegations that the defendant failed
to warn that: "the Product did not, in fact, provide long term
reinforcement of soft tissue while minimizing tissue
attachment"; "that the Product's mesh contracts over time,

15

causing tension to increase where the tacks or sutures secure it
and causing eventual tear of the Product's mesh, which is
exactly what happened to Plaintiff's Product's mesh"; that the
defendant "misrepresented to the medical community that the
Product was safe and effective" and "improperly minimized the
adverse effects associated with the Product's use" despite
"numerous reports documenting serious adverse events associated
with the Product"; that "Covidien's brochure for the Product,
. . . provides very minimal amount of information for the
general public or the medical community regarding adverse
effects, serious risks of physical injury, or warnings of same,
that it knew was associated with the Product and its use"; and
that "Plaintiff's physicians would not have elected to use
Covidien's Product had it been equipped with sufficient
warnings, including the possibility for the Product's mesh
migration, failure, and need for future surgeries." SAC
¶¶ 127-30, 137.

These additions do not cure the deficiencies in the
plaintiff's failure to warn claim because the allegations do not
identify how the warnings given were insufficient to warn
physicians and the plaintiff of the potential dangers of using
the Mesh. The warnings given noted the risks of the
complications that Ms. Dunham actually experienced, namely,
chronic pain, adhesion, and hernia recurrence. SAC ¶¶ 30-32, 84;

see also Green, 2019 WL 4142480, at *5 ("As an initial matter, the injuries that Plaintiff allegedly suffered – recurring hernias, pain, and adhesions – are included in Defendant's warnings as they are set forth in the Amended Complaint.") (emphasis in original); Kennedy, 2019 WL 1429979, at *5. And beyond conclusory statements, the plaintiff does not allege adequately that Ms. Dunham or her physicians would have chosen not to use the Mesh but for the allegedly inadequate warnings. See, e.g., Dunham, K., 2019 WL 2461806, at *3 (dismissing the failure to warn claim because the complaint did not "particularize specific omissions or inadequacies supporting its allegations that [the plaintiff's] physicians would not have elected to use those products if they had been accompanied by adequate warnings regarding the possibility of mesh migration, failure, chronic pain, and need for future surgeries beyond the generally accepted risks of hernia surgery."). Therefore, the plaintiff has not adequately stated a failure to warn claim.

### D. Negligence

In Count IV, the plaintiff alleges that the defendant was negligent in designing, manufacturing, and selling its product. SAC ¶¶ 139-47. In New York, claims for negligent design and design-based strict products liability are analyzed identically. See Kennedy, 2019 WL 1429979, at *5 (citing Denny v. Ford Motor Co., 662 N.E.2d 730, 735-36 (N.Y. 1995)); see also Colon, 199 F.

17

Supp. 2d at 84 ("Failure to warn claims are identical under strict liability and negligence theories of recovery."); Estrada v. Berkel Inc., 789 N.Y.S.2d 172, 173 (App. Div. 2005) (quoting Martin v. Hacker, 628 N.E.2d 1308, 1311 n.1 (N.Y. 1993)) ("Where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent."). Therefore, the plaintiff's negligence claim is analyzed under the same standards as set forth in Voss. See, e.g., Adams v. Genie Indus., Inc., 929 N.E.2d 380, 384 (N.Y. 2010) ("Thus, while plaintiff here has pleaded both strict liability and negligent design causes of action, the standards set forth in Voss apply to both.").

Because the plaintiff's strict products liability claims failed as inadequately pleaded, the plaintiff's allegations of negligent design, manufacturing, and selling are likewise deficient. See, e.g., Green, 2019 WL 4142480, at *5 (dismissing negligence claim because strict liability claims fail); Kennedy, 2019 WL 1429979, at *5 (same). The Second Amended Complaint did not adequately cure the defects with the strict products liability or negligence claims in the First Amended Complaint. Therefore, the plaintiff failed to state a negligence claim.

### E. Breach of Express Warranty

In Count V, the plaintiff alleges a breach of express warranty. In order to state a claim for breach of express

18

warranty, a plaintiff must show that there was "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." Weiner v. Snapple Beverage Corp., No. 07-CV-8742, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011) (quoting Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010). The "natural tendency" element requires that the seller-defendant's statement be "definite enough" such that the natural tendency of the statement would be to induce purchase. See Becker v. Cephalon, Inc., No. 14-CV-3864, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015). The reliance element requires "no more than reliance on the express warranty as being a part of the bargain between the parties." CBS Inc. v. Ziff-Davis Pub. Co., 553 N.E.2d 997, 1001 (N.Y. 1990).

In the First Amended Complaint, the plaintiff pointed to several statements made by the defendant that allegedly comprised the express warranty, namely that the Mesh was "the most complete hernia repair solution"; "one of the most studied, innovative and reliable hernia products available today"; "pre-clinical and clinical evidence of proven performance"; "Patient Comfort"; "proven protection"; "proven effective, with more than 12 years of documented success"; "proven integration"; "incites excellent fibrous ingrowth and neoperitoneum versus the

19

inflammatory encapsulation of other meshes"; and "ease of use."
FAC ¶¶ 155-56. The only statement that was definite was the
statement that the Mesh "incited excellent fibrous ingrowth and
neoperitoneum versus the inflammatory encapsulation of other
meshes." However, even this statement was vague and was not the
kind of statement that has a natural tendency to induce
purchase. See, e.g., Kennedy, 2019 WL 1429979, at *6 ("In the
present case, Plaintiff does not identify a specific warranty
made by Defendant that he relied on. His characterization of
Defendant's marketing material as generally implying that PCOx
Mesh was 'safe and effective' does not identify any specific
actionable conduct or statement on behalf of Defendant.");
Dunham, K., 2019 WL 2461806, at *5 (finding that the complaint
did not contain an affirmative statement of fact that formed the
basis of a warranty because "the statements are generic,
indefinite statements about the products at issue"). Moreover,
there were no plausible allegations that Ms. Dunham or her
physicians relied on the alleged warranty beyond the plaintiff's
conclusory statement that they did so. See FAC ¶ 159. This kind
of conclusory statement of reliance was insufficient to make out
a claim for breach of express warranty.

Despite this Court's prior ruling on the motion to dismiss
the First Amended Complaint, and the clear instruction as to how
the pleading was deficient, the plaintiff did not substantively

20

amend the breach of express warranty claim. Apart from minor
stylistic changes and certain deletions, the only notable
addition is an allegation, similar to an allegation in the
Krulewich Second Amended Complaint, that apparently was left
unfinished. In that allegation, the plaintiff asserted that
"Covidien breached the express warranties it made about the
Product because[.]" SAC ¶ 153. That is plainly an insufficient
basis to state a claim. Therefore, the breach of express
warranty claim, as stated in the Second Amended Complaint, fails
for the same reasons it failed in the First Amended Complaint.

### F. Breach of Implied Warranty

In Count VI, the plaintiff alleges that the defendant
breached an implied warranty that the Mesh was reasonably fit
for its intended use and that it was designed, manufactured, and
sold in accordance with good design, engineering, and industry
standards. SAC ¶¶ 155-62. A claim for breach of an implied
warranty in a products liability action focuses on "the
expectations for the performance of the product when used in the
customary, usual and reasonably foreseeable manners." Denny, 662
N.E.2d at 736. "The implied warranty of merchantability is a
guarantee by the seller that its goods are fit for the intended
purpose for which they are used and that they will pass in the
trade without objection." Caronia v. Philip Morris USA, Inc.,
715 F.3d 417, 433 (2d Cir. 2013) (quoting Saratoga Spa & Bath,

Inc. v. Beeche Systems Corp., 656 N.Y.S.2d 787, 789 (App. Div. 1997)). To comply with an implied warranty, a seller's goods must be of "a minimal level of quality," but need not "be perfect" or "fulfill a buyer's every expectation." Id. A breach of implied warranty may be established based on circumstantial evidence, and the plaintiff does not need to prove a specific defect. See Dunham, K., 2019 WL 2461806, at *5.

This Court dismissed the plaintiff's breach of implied warranty claim in the First Amended Complaint because the plaintiff's allegations consisted of nothing more than the conclusory statement that the "hernia mesh product was defective as set forth above, was not fit for its intended use and was not designed, manufactured, or sold in accordance with good design, engineering and industry standards." FAC ¶ 167. These conclusory allegations were insufficient to state a claim for breach of implied warranty.

The Second Amended Complaint is likewise insufficient to state a claim for breach of implied warranty. Despite this Court's prior ruling on the motion to dismiss the First Amended Complaint, and the clear instruction as to how the pleading was deficient, the plaintiff did not substantively amend the breach of implied warranty claim. The conclusory allegations that the plaintiff and the plaintiff's physician relied on the implied warranty do not cure the defect that the plaintiff did not

adequately allege that the Mesh was deficient when used in "customary, usual and reasonably foreseeable manners." Denny, 662 N.E.2d at 736; see also Dunham, K., 2019 WL 2461806, at *5 (dismissing breach of implied warranty claims because "[a]lthough the complaint alleges that [the plaintiff] has experienced stomach pain and recurring hernias following his procedures, those allegations of common consequences of hernia surgeries do not show that Covidien's products were unsafe for hernia mesh repairs"). In this case, as in Dunham, K., Ms. Dunham's injuries are not sufficient to show that the Mesh was unsafe for use in hernia surgeries. Therefore, the breach of an implied warranty claim in the Second Amended Complaint fails for the same reasons it failed in the First Amended Complaint.

### G. Negligent Misrepresentation

In Count VII, the plaintiff alleges negligent misrepresentation on the theory that the defendant made false representations about the results of the hernia mesh product testing, and that the defendant was negligent in ascertaining the truth of the representations. SAC ¶¶ 163-73. "A negligent misrepresentation is actionable under New York law where the defendant has been careless 'in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage,' and where the author of the statement has 'some relationship or duty . . . to act with care' vis-a-vis

23

the party at whom the statement is directed." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 583 (2d Cir. 2005) (quoting White v. Guarente, 372 N.E.2d 315, 319 (N.Y. 1977) (alteration in original). Claims for negligent misrepresentation that sound in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kennedy, 2019 WL 1429979, at *6 & n.14; see also Aetna Cas., 404 F.3d at 583. Negligent misrepresentation is established by showing that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000); Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011).

This Court dismissed the plaintiff's negligent misrepresentation claim in the First Amended Complaint because the plaintiff failed to provide any factual support for her allegation that the misrepresentations made by the defendant were false, and thus failed to allege an element of a negligent

24

misrepresentation claim under a Rule 12(b)(6) standard, as well as the particularity requirements demanded by Rule 9(b).

In the Second Amended Complaint, the plaintiff again failed to identify which statements or representations made by the defendant were false and offered no support for the claim that the defendant's representations were indeed false. In fact, the Second Amended Complaint made few substantive changes to the First Amended Complaint with respect to the negligent representation claim. Instead, the plaintiff alleges a conclusory and generalized statement that "[t]he representations made by Covidien were false; Covidien was careless or negligent in ascertaining the truth of the representations at the time Covidien made these misrepresentations." SAC ¶ 169. To the extent that the plaintiff does point to particular representations she claims to be false, she fails to provide any factual basis to conclude that those statements were false, misleading, or contained any material omissions. Moreover, the plaintiff fails to show that the plaintiff or her physicians reasonably relied on the alleged material misrepresentations to the plaintiff's detriment. That the plaintiff suffered adverse consequences from the procedure does not provide sufficient support for the required element that the plaintiff reasonably relied on misrepresentations by the defendant. Therefore, even without applying the heightened pleading standards of Rule 9,

25

the plaintiff has failed to state a negligent misrepresentation claim.

## H. Fraudulent Misrepresentation

In Count VIII, the plaintiff alleges that the defendant fraudulently misrepresented material facts and made material omissions from 2011 to the present to the plaintiff, her physicians, and the medical community to induce them to use the Mesh through brochures, webpages, press releases, advertising campaigns, and other forms of public communications. SAC ¶¶ 174-98.

To state a claim for fraudulent misrepresentation in compliance with Rule 9(b), the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999).

This Court dismissed the plaintiff's claim for fraudulent misrepresentation in the First Amended Complaint because she had not explained how the statements were fraudulent. There was no factual basis in the First Amended Complaint to conclude that the defendant made false or misleading statements or omissions in marketing the Mesh. For the same reasons, there was no basis to conclude that the statements the plaintiff pointed to in the

26

First Amended Complaint in order to make out a claim for fraudulent misrepresentation were in fact false or misleading.

The plaintiff has not adequately cured that defect in the Second Amended Complaint. While the Second Amended Complaint challenges the defendant's representations in its brochure, the plaintiff still has not alleged any factual basis for the claims that the defendant's representations were false. And despite the plaintiff's allegation that "[n]either Plaintiff nor Plaintiff's physicians had the same knowledge regarding the serious risks of physical injury that were hidden and not discoverable through the use of reasonable care or inspection, and that were only known by Covidien through its testing of the Product and the testing results," SAC ¶ 171, the defendant did specifically warn of pain, adhesion, and recurrence as common injuries and known side effects of hernia surgeries using Mesh. Id. Ex. A; see also Kennedy, 2019 WL 1429979, at *7 ("Absent from these allegations is any factual basis for Plaintiff's conclusion that the representations made by the Defendant were false or misleading. In fact, the advertising material incorporated into the Complaint appears to have disclosed the risks of the conditions that Plaintiff has allegedly suffered."). The absence of a factual basis to support the plaintiff's claims that the defendant's representations were either false or misleading is

fatal to the claim. Therefore, the plaintiff has failed to state a claim for fraudulent misrepresentation.

### I. Unconscionable Commercial Practices

In Count IX, the plaintiff alleges that the defendant used unconscionable commercial practices, deception, fraud, false pretenses, false promises, and misrepresentation, and knowingly concealed, suppressed and omitted material facts with the intent that consumers rely on such concealment, suppression and omission in violation of Sections 349 and 350 of the New York General Business Law. SAC ¶¶ 199-215. In particular, the plaintiff alleges that the defendant failed to disclose known risks. Id. ¶ 203.

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any services in the state." Id. § 350. Under either section, the plaintiff must allege that the defendant has engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Kennedy, 2019 WL 1429979, at *7 (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)). Although a

plaintiff's showing necessary for deceptive acts under the statute is lower than for common law fraud, the plaintiff must nevertheless show that the alleged deceptive acts would mislead a reasonable consumer acting reasonably under the same circumstances. See Stutman v. Chemical Bank, 731 N.E.2d 608, 611-12 (N.Y. 2000). Moreover, to establish consumer-oriented conduct, the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995).

This Court dismissed the plaintiff's claim under Sections 349 and 350 in the First Amended Complaint because the plaintiff's conclusory statements did not amount to the necessary showing that the alleged deceptive acts would mislead a reasonable consumer. Nor did the plaintiff's allegations lead to a conclusion that the defendant's acts or practices had a broader impact on consumers. In the First Amended Complaint, the plaintiff merely alleged that the "Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product" and that the "Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks," which were the proximate cause of the plaintiff's injuries. FAC ¶¶ 205-06, 210.

The claim under Sections 349 and 350 in the Second Amended Complaint suffers from the same defects. The plaintiff alleges that "reasonable patients/consumers acting reasonably, such as the Plaintiff herein and Plaintiff's physicians, were caused to suffer ascertainable loss of money and property and actual damages." SAC ¶ 201. Beyond this conclusory allegation, the plaintiff has not alleged how the defendant's acts would mislead a reasonable consumer or that the defendant's acts or practices had a broader impact on consumers at large. See Oswego Laborers, 647 N.E.2d at 744. In fact, the plaintiff did not add any substantive allegations to the Second Amended Complaint that could support a claim under Sections 349 and 350. Compare FAC ¶¶ 202-17 with SAC ¶¶ 199-215. Therefore, for the same reasons the plaintiff's claim under Sections 349 and 350 failed in the First Amended Complaint, the claim under Sections 349 and 350 likewise fails in the Second Amended Complaint.

### J. Unjust Enrichment

In Count X, the plaintiff alleges a claim for unjust enrichment. Under New York law, a claim for unjust enrichment requires a showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.

2000)). A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012)).

This Court dismissed the plaintiff's claim for unjust enrichment in the First Amended Complaint because the plaintiff did not plead facts plausibly demonstrating that the defendant's product was defective or that the sale was induced through misrepresentation. Consequently, there was no equitable basis for restitution. See, e.g., Kennedy, 2019 WL 1429979, at *8. The plaintiff did not substantively amend her claim for unjust enrichment. Nor did any other of the plaintiff's amendments provide a basis for equitable relief. As in the First Amended Complaint, the strict liability and misrepresentation claims fail in the Second Amended Complaint, and there is no other equitable basis for the plaintiff's claim of unjust enrichment. Therefore, the plaintiff's unjust enrichment claim in the Second Amended Complaint is deficient for the same reasons it was deficient in the First Amended Complaint.

## K. Punitive Damages

In Count XI, the plaintiff alleges a claim for punitive damages because "Covidien knew and recklessly disregarded the fact that its Product caused debilitating and potentially life altering complications with greater frequency than feasible alternative methods and/or products used to treat hernias." SAC ¶ 228.

A punitive damages claim is derivative. Rocanova v. Equitable Life Assur. Soc. of U.S., 634 N.E.2d 940, 945 (N.Y. 1994) ("A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud."). Because all of the plaintiff's substantive claims have been dismissed, her claim for punitive damages must be dismissed as well. See, e.g., Kennedy, 2019 WL 1429979, at *8; Green, 2019 WL 4142480, at *10; Rose Lee Mfg. v. Chemical Bank, 588 N.Y.S.2d 408, 410 (App. Div. 1992) ("[C]ause of action seeking to recover punitive damages should also have been dismissed, because a demand for punitive damages does not amount to separate cause of action for pleading purposes."). Therefore, the plaintiff's punitive damages claim in the Second Amended Complaint is deficient for the same reasons it was deficient in the First Amended Complaint.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted** in its entirety. The Clerk is directed to enter judgment dismissing this case with prejudice. The Clerk also is directed to close Docket No. 32 and to close this case.

**SO ORDERED.**

Dated:      New York, New York
            October 9, 2020

                                        John G. Koeltl
                               United States District Judge